UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:22-cv-25-MOC

| | | |
|---|---|---|
| **JARRET LEE DOCKERY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security**, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Plaintiff Jarret Lee Dockery's Motion for Summary Judgment (Doc. No. 9) filed on July 25, 2022, and Defendant Commissioner's Motion for Summary Judgment (Doc. No. 12) filed on August 26, 2022. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative review decision on his application for disability insurance benefits.

For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **GRANTED**, Defendant's Motion for Summary Judgment is **DENIED**, and this matter is **REVERSED** and **REMANDED** for further proceedings consistent with this Order.

**I. ADMINISTRATIVE HISTORY**

On April 18, 2014, Jarret Lee Dockery ("Plaintiff") applied for Supplemental Security Income Benefits under Title XVI of the Social Security Act, and on April 21, 2014, he applied for Disability Insurance Benefits under Title II of the Social Security Act. (Administrative Transcript ("Tr.") at 315–21, 322–23, 718).

The Administrative Law Judge ("ALJ") issued a decision denying plaintiff's claims on August 9, 2017. (Tr. 64–89, 159–71). Plaintiff appealed this decision to an Appeals Council, and

on August 1, 2018, the Appeals Council issued an order remanding the case. (Tr. 177–80). The ALJ issued a decision once again denying plaintiff's claim on June 10, 2019. (Tr. 18–31). The Appeals Council denied review on November 25, 2019, and Plaintiff challenged the agency action in federal court. On February 13, 2021, this Court issued an order of reversal and remand. (Tr. 788–802). The ALJ issued a decision denying Plaintiff's claim for the third time on January 3, 2022. (Tr. 697–726).

Having exhausted his administrative remedies, Plaintiff commenced this action under 42 U.S.C. § 405(g), seeking judicial review of that decision. The Commissioner has answered Plaintiff's complaint, and this case is now before the Court for disposition of the parties' cross-motions for summary judgment.

## II. FACTUAL BACKGROUND

Plaintiff applied for Supplemental Security Income Benefits under Title XVI of the Social Security Act and Disability Insurance Benefits under Title II of the Social Security Act (Tr. 315–21, 322–23, 718). Plaintiff's Title II claim was dismissed. (Tr. 39-63, 354). To qualify for Title II benefits, an individual must–among other things–meet insured status requirements. Plaintiff was last insured for Title II benefits in 2012. (Tr. 324, 701). Plaintiff originally alleged his disability began on November 14, 2007; however, he later amended his alleged onset disability to April 18, 2014. (Tr. 332, 354, 701). Because Plaintiff's did not have insured status on his onset date of April 18, 2014, he does not meet Title II's insured status requirements and his Title II claim was consequently dismissed. (Tr. 332, 354, 701). The Title XVI issue remains.

Plaintiff alleges disability based on a back problem, degenerative disc disease, rheumatoid arthritis, and depression. (Tr. 94, 358). Plaintiff has met with numerous medical professionals in relation to his medical issues. He was treated by a Family Nurse Practitioner

(FNP), Tanya Dyer ("Dyer"), who served as his primary care provider during the period relevant to his disability claim, up to and including April 17, 2017. (Tr. 515–21, 591–616, 617–20). Moreover, he completed a single evaluation by consultative examiner ("CE") John Bevis, M.A. LPA ("Bevis"), at the request of the Social Security Administration on June 5, 2014. (Tr. 556–59). And Plaintiff was treated by Jill Thompson, M.D., neuroradiology specialist with Hope Wellness for pain management, from January 29, 2018, through April 19, 2021. (Tr. 660, 689, 897–916).

Plaintiff was 35 years old on his alleged onset date, and he was 43 years old when the ALJ issued her latest decision. (Tr. 315, 718). He has a high school education, and he has worked in the past as a forklift driver; as a server in a restaurant; and as a laborer, loading and unloading trucks. (Tr. 359).

Plaintiff received his first unfavorable ALJ decision on August 9, 2017. (Tr. 64–89, 159–71). An Appeals Council remanded the case, and the ALJ issued a decision once again denying Plaintiff's claim. (Tr. 177–80, 18–31). Plaintiff challenged this second ALJ decision and on February 13, 2021, this Court issued an order of reversal and remand. (Tr. 788–802). In its decision, the Court found that the ALJ failed to properly weigh the opinion of CE John Bevis, as required in the regulations at 20 C.F.R. §§ 404.1527(c)(1)–(6), 416(c)(1)–(6). (Tr. 798–801).

The ALJ issued a decision denying Plaintiff's claim for the third time on January 3, 2022. (Tr. 697–726). In her decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. The ALJ also found that Plaintiff suffers from the severe impairments of degenerative disc disease, lumbar radiculopathy, lumbar and facet arthropathy, multi-level degenerative spondylosis, degenerative spondylolisthesis, peripheral neuropathy, depressive and anxiety disorders, chronic pain syndrome, and opioid dependence. (Tr. 703). She

found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.). Lastly, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, with certain limitations:

> he can occasionally perform postural activities but should avoid kneeling, squatting, crawling, stooping, and workplace hazards including but not limited to ladders, ropes, scaffolds, unprotected heights, and machinery with dangerous moving parts; frequently but not continuously use his bilateral upper extremities for pushing, pulling, operating hand controls, as well as for fine and gross manipulations, overhead reaching, and reaching in all directions; and he must be allowed to alternate between sitting and standing up to two times each hour. He can perform unskilled work and carry out routine, repetitive tasks; sustain attention and concentration for two hours at a time; frequently but not continuously contact or interact with co-workers and supervisors; occasionally contact or interact with the public; and should avoid work environments dealing with crisis situations, complex decision making, or constant changes in a routine setting.

(Tr. 707).

As a result of this RFC assessment, the ALJ determined that Plaintiff is unable to resume his past relevant work as a material handler. (Tr. 716). However, she concluded that Plaintiff could perform other work in the national economy, including garment folder, marker, and wearing apparel shaker. (Tr. 717). The ALJ therefore determined that Plaintiff was not entitled to supplemental security income benefits, based on Plaintiff's ability to perform unskilled, light work. (Tr. 27).

### III. STANDARD OF REVIEW

#### a. Substantial Evidence Review

Section 405(g) of Title 42 of the U.S. Code permits judicial review of the Social Security Commissioner's denial of social security benefits. Review by a federal court is not de novo. Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986). Rather, inquiry in disability cases is

limited to whether the ALJ (1) supported her findings with substantial evidence and (2) applied the correct law. Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 94 (4th Cir. 2020).

Substantial evidence "consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). In other words, substantial evidence is enough relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). However, "[i]n reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgement for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990)). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

An ALJ must also apply the correct law. A factual finding by the ALJ is only binding if the finding was reached by a proper standard or application of the law. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) (citing Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980); Williams v. Ribbicoff, 323 F.2d 231, 232 (5th Cir. 1963); Tyler v. Weinberger, 409 F. Supp. 776, 785 (E.D. Va. 1976)).

### b. Sequential Evaluation

The Social Security Administration uses a five-step sequential review process to determine whether an individual is disabled. 20 C.F.R. 404.1520(a) and 416.920(a). An ALJ evaluates a disability claim as follows:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity (RFC), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. Residual Functional Capacity (RFC)

RFC is an "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling ("SSR") 96-8p. RFC "does not represent the least an individual can do despite his or her limitations or restrictions, but the most." Id. RFC is the most someone can do despite their mental and physical limitations. 20 C.F.R. § 404.1545(a)(1). To determine RFC, the adjudicator is instructed to base the assessment on "all of the relevant medical and other evidence." 20 C.F.R § 404.1545(a)(3).

The ALJ must support each conclusion with evidence. SSR 96-8p requires the following:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule, and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

In other words, "the ALJ must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (quoting Mascio v. Colvin, 780 F.3d 632, 694 (4th Cir. 2015) (quoting Monroe, 826 F.3d at 189 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th

Cir. 2000))). In formulating the RFC, the ALJ may not just pick and choose from the evidence but must consider it in its entirety. Kirby v. Astrue, 731 F. Supp. 2d 453, 456 (E.D.N.C. 2010).

IV. **FINDINGS AND CONCLUSIONS**

Plaintiff alleges three errors: (1) the ALJ failed to adequately evaluate and sufficiently explain how she weighed the opinion of Consultative Examiner Bevis, as instructed by the district court; (2) the ALJ failed to adequately evaluate and sufficiently explain how she weighed the opinion of Plaintiff's Family Nurse Practitioner ("FNP") Dyer; and (3) the ALJ mischaracterized evidence in Plaintiff's treatment notes from Hope Wellness, and as a result, the RFC she adopted is not supported by substantial evidence. The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether the Court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision is not supported by substantial evidence.

a. **The ALJ did not adequately evaluate and sufficiently explain how she weighed the opinion of Consultative Examiner Bevis**

The ALJ failed to meaningfully explain her decision to reject Bevis' medical opinion. In forming the RFC, the ALJ "must both identify evidence that supports [her] conclusion and build an accurate and logical bridge from that evidence to [her] conclusion." Woods, 888 F.3d at 694 (brackets, emphasis, and internal quotation marks omitted). When the evidence cited by an ALJ fails to support her RFC determination, it may be concluded that she has failed to build an accurate and logical bridge, and remand is required; in the absence of an adequate narrative discussion,

district courts are not to mine the record to find support for an ALJ's unexplained decision. Kilgo v. Saul, No. 3:18-CV-312-RJC-DSC, 2019 WL 3719609, at *3 (W.D.N.C. Aug. 7, 2019) (citing Brown v. Colvin, 639 F. App'x 921, 923 (4th Cir. 2016)).

Here, the ALJ did not build an accurate and logical bridge from the evidence to the conclusion that Bevis' opinion should be rejected. When evaluating and weighing medical opinions an ALJ must consider multiple factors, including (1) the examining relationship, (2) the treatment relationship, including the length of the relationship and the frequency of examination and the nature and extent of the relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c)(1)–(6), 416(c)(1)–(6) ("[W]e consider all of the following factors in deciding the weight we give to any medical opinion."). The regulations require "ALJs to consider all of the enumerated factors in deciding what weight to give to a medical opinion." Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 107 n.16 (4th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)). The Fourth Circuit held that although "an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered each of the factors before deciding how much weight to give the opinion." Dowling v. Comm'r of SSA, 986 F.3d. 337, 385 (4th Cir. 2021).

Bevis "opined that the claimant experienced significant long-term problems with chronic pain, loss of physical energy and stamina, and significantly depressed moods, which caused significant difficulty with his ability to tolerate the stress, pressure, and demands of gainful employment." (Tr. 715). The ALJ provided two rationales for rejecting Bevis' opinion. However, each of these rationales is incomplete. First, the ALJ asserted that Bevis' opinion is not supported by FNP Dyer's assessment. (Id.). However, nothing in Dyer's assessment undermines

Bevis' opinion. To the contrary, Dyer's assessment identified severe pain to the lower back, insomnia, anxiety, and depression as symptoms suffered by Plaintiff. (Tr. 517–18). Dyer further determined that these symptoms would frequently impair Plaintiff's ability to complete simple work-related tasks. (Id.). In formulating the RFC, the ALJ may not just pick and choose from the evidence but must consider it in its entirety. Kirby v. Astrue, 731 F. Supp. 2d 453, 456 (E.D.N.C. 2010). The ALJ does not cite to this corroborating evidence from Dyer and the Court is "left to guess" about whether the ALJ considered this evidence, and if it was considered, how it was considered. Mascio, 780 F.3d at 637. The absence of this evidence from the ALJ's analysis creates an incomplete explanation of how the ALJ weighed Bevis' medical opinion.

Second, the ALJ reasoned that "[w]hile Mr. Bevis is a specialist in psychology and examined the claimant, his relationship with the claimant was limited to a one-time evaluation, and he did not have the benefit of a longitudinal perspective of the claimant's history." (Tr. 715). For medical opinions, the applicable regulatory scheme provides that, generally, "we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 416.927(c)(1). While the frequency of examination is a factor in weighing a medical opinion, the ALJ failed to address the factors of examining supportability and consistency, as required by 20 C.F.R. §§ 404.1527(c)(1)–(6). The state agency's reviewing sources never examined Plaintiff, and the opinions of those who did examine Plaintiff seem consistent with Bevis' assessment. The ALJ did not describe how this evidence was considered when assigning weight to Bevis' medical opinion. The ALJ's lack of explanation here requires remand.

      **b. The ALJ did not adequately evaluate and sufficiently explain how she weighed the opinion of Plaintiff's FNP Dyer.**

The ALJ also did not sufficiently explain why the ALJ rejected the assessment of restrictions by FNP Dyer. The ALJ asserted that Dyer's opinion on Plaintiff's mental limitations was inconsistent with the record regarding Plaintiff's daily activities. (Tr. 715). In particular, the ALJ pointed to Plaintiff's ability work on his scooter, drive his scooter short distances, watch television, and "perform some household chores" as inconsistent with Dyer's assessment of Plaintiff's limitations. (Id.). However, when an ALJ considers a claimant's daily activities "the ALJ must provide an explanation as to how particular activities show Plaintiff can persist through an eight-hour workday." Bryson v. Berryhill, No. 1:20-CV-00169-MOC, 2021 WL 2517682, at *6 (W.D.N.C. June 18, 2021) (citing Arakas, 983 F.3d at 100). When the ALJ fails to explain how Plaintiff's performance of certain activities of daily life show that he can work an eight-hour day, substantial evidence does not support the decision. Bruce v. Kijakazi, No. 5:20-CV-083-DCK, 2022 WL 981947, at *9 (W.D.N.C. Mar. 30, 2022) (citing Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005)). Here, the ALJ did not explain how Plaintiff's daily activities informed his restrictions with regards to an eight-hour workday. This lack of explanation requires remand.

### c. The ALJ's mischaracterization of the Hope Wellness treatment notes was harmless error.

Lastly, Plaintiff asserts that the ALJ mischaracterized the Hope Wellness treatment notes as enabling Plaintiff to continue working. This Court disagrees. A party attacking an agency determination must not only show that an error occurred, but also that it was harmful. Shinseki v. Sanders, 556 U.S. 396, 409 (2009). Here, if an error occurred, it was harmless. The ALJ knew the Plaintiff was not working from the record. Specifically, Plaintiff's wage records showed no earnings after Plaintiff's disability onset. (Tr. 324-344, 350-353, 870-878). The ALJ

demonstrated this knowledge when she noted that Plaintiff had not engaged in substantial gainful activity since his onset date of April 18, 2014. (Tr. 703). Therefore, the ALJ's error was harmless, and since the Plaintiff cannot demonstrate that the ALJ's error resulted in prejudice, remand is not appropriate on this issue. Camp v. Massanari, 22 Fed. App'x 311 (4th Cir. 2001) (citing Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000) (requiring a showing that the error's correction might lead to a different conclusion)).

## V. CONCLUSION

In sum, the Court agrees with Plaintiff that the ALJ erred by failing to adequately explain how she weighed the opinions of CE Bevis and FNP Dyer. Thus, this matter is remanded for further administrative proceedings consistent with this Order.

Having thoroughly reviewed the ALJ's decision, the record, and the parties' motions and briefs, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that for the reasons set forth above, Plaintiff's Motion for Summary Judgment (Doc. No. 9) is **GRANTED**, Defendant's Motion for Summary Judgment (Doc. No. 12) is **DENIED**, and this matter is **REVERSED** and **REMANDED** to the Commissioner for further administrative proceedings consistent with this Order.

Signed: September 26, 2022

Max O. Cogburn Jr
United States District Judge